IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

LINDA L. COLTON,                                    Case No. 3:15-cv-01962-CL

             Plaintiff,

                                            REPORT AND RECOMMENDATION

     v.

CAROLYN W. COLVIN,
Commissioner of Social Security
Administration,

                  Defendant.
_____

TIM WILBORN
WILBORN LAW OFFICE, P.C.
P.O. Box 370578
Las Vegas, NV 89137
        Of Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011
SARAH MOUM
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
        Of Attorneys for Defendant

1- REPORT AND RECOMMENDATION

*Report and Recommendation*

CLARKE, Magistrate Judge:

Linda Louise Colton ("Colton") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision should be REVERSED and REMANDED for further proceedings.

*Procedural Background*

Colton filed for DIB and SSI on February 22, 2013, alleging disability as of April 27, 2011; Colton later amended her alleged onset date to September 1, 2011. Tr. 34, 158, 162. Her application was denied initially and upon reconsideration, and a hearing was held on April 15, 2015 before an Administrative Law Judge ("ALJ"); Colton was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 32-49. On June 11, 2015, ALJ Elizabeth Watson issued a decision finding Colton not disabled. Tr. 16-24. Colton requested timely review of the ALJ's decision and, after the Appeals Council denied her request for review, filed a complaint in this Court. Tr. 1-6.

*Factual Background*

Born in 1955, Colton was 56 on the disability onset date. Tr. 34, 158. She graduated high school and attended dental assistant school. Tr. 34. She previously worked as an admitting clerk at a hospital for at least ten years. Tr. 35. She alleges disability due to diabetes mellitus with peripheral neuropathy; recurring cellulitis; chronic obstructive pulmonary disease ("COPD"); coronary artery disease; status-post myocardial infarction with revascularization and stenting; depression; and mild acquired neuropsychological impairment. Tr. 181.

2- REPORT AND RECOMMENDATION

*Disability Analysis*

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§

4- REPORT AND RECOMMENDATION

404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### *The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Colton had not engaged in substantial gainful activity since the alleged onset date, September 1, 2011. Tr. 18.

At step two, the ALJ determined Colton had the following severe impairments: diabetes mellitus with peripheral neuropathy, recurrent cellulitis, COPD, status post myocardial infarction with revascularization and stent placement. Tr. 18. The ALJ identified a few conditions that did not rise to the level of severe impairment, such as hypertension, obesity, obstructive sleep apnea, and depression. Tr. 19.

At step three, the ALJ found that Colton's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20-21. Because Colton did not establish disability at step three, the ALJ continued to evaluate how Colton's impairments affected her ability to work during the relevant period. From the amended onset date through June 30, 2013, the ALJ found Colton had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she:

> could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. She could sit, stand, and walk for about 5-hours in an 8-hour day with normal breaks. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas.

Tr. 20. The ALJ assessed a separate RFC from June 30, 2013 through the date of the decision. The ALJ found Colton had the RFC to perform sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she:

5- REPORT AND RECOMMENDATION

is limited to no more than occasional bilateral foot control operation. The claimant is limited to no more than occasional climbing of ramps and stairs and must never climb ladders, ropes, or scaffolds. She is limited to no more than occasional stooping, kneeling, and crouching. She must never crawl and must avoid concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas. The claimant must avoid all exposure to workplace hazards such as moving machinery and unprotected heights. Tr. 22.

At step four, the ALJ found that Colton was able to perform her past relevant work as an admitting clerk under both RFCs. Tr. 24. Accordingly, the ALJ concluded Colton was not disabled under the Act. *Id.*

## *Standard of Review*

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir.2004). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir.2009) (*quoting Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995)). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir.2007) (*citing Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id. (citing Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir.2006)); *see also Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir.2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*

*Discussion*

Colton alleges the ALJ erred by improperly assessing: (1) Colton's subjective symptom testimony; (2) the lay witness testimony; and (3) the medical evidence.

I.      Colton's Symptom Testimony

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick*, 157 F.3d at 724. General findings (e.g., "record in general indicates improvement") are an insufficient basis to support an adverse credibility determination. *Id.* at 722. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Examples of clear and convincing reasons for rejecting Plaintiff's testimony include inconsistencies between her testimony and her conduct; daily activities inconsistent with the alleged symptoms; inadequately explained failure to seek treatment; severity and effect of the symptoms complained of; and the ability to work after allegedly becoming disabled. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1040; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Bray*, 554 F.3d at 1227; *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective

7- REPORT AND RECOMMENDATION

symptom statements are consistent with the record as a whole. *See* SSR 16-3p, <u>available at</u> 2016 WL 1119029 (superseding SSR 96-7p). However, the ALJ's June 2015 decision was issued nearly one year before SSR 16-3p became effective and there is no binding precedent establishing that this new ruling applies retroactively. *See Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date); *see also Garner v. Colvin*, 626 Fed.Appx. 699, 701 (9th Cir. 2015) ("we cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time"). Therefore, SSR 16-3p is inapplicable to this case.

The ALJ gave several clear and convincing reasons to reject Colton's subjective symptom testimony. The ALJ noted that Colton failed to adequately manage her diabetes. Tr. 21-23. A plaintiff's subjective symptom testimony may be less credible if the level of treatment is inconsistent with those complaints, or the plaintiff fails to follow the treatment without good cause. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The record shows Colton repeatedly failed to manage her diabetes. In September 2011, although Colton had established care, she failed to begin managing her diabetes until April 2012, despite filling other prescriptions during the intervening months. Tr. 287-88, 292-93. Additionally, in August 2014, Colton had "let her diabetes slide a little." Tr. 1025. While Colton argues she could not afford her diabetes medication, she purchased other medications during the same time periods. Tr. 21. Therefore, the ALJ's interpretation of the evidence was rational. Tr. 287-88, 292-93; *see Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational).

The ALJ also rejected Colton's testimony because medication alleviated many of her mental symptoms, and there were few objective findings supporting her allegations of memory loss and chronic pain. Tr. 23. ALJs are permitted to consider the lack of medical evidence, or

conflicting medical evidence, in evaluating a plaintiff's subjective symptom testimony, so long as it is not the sole reason for rejecting the plaintiff's testimony. *See Burch*, 400 F.3d at 681. The record shows that Zoloft alleviated her depression, such that she presented with normal mood, affect, behavior, and thought content in multiple appointments. Tr. 272, 258-59. Furthermore, Dr. Samuel Crane, one of Colton's treating physicians, noted that he has "not seen an obvious memory deficit," contradicting Colton's claims of debilitating concentration and memory loss. Tr. 23, 1025. Additionally, the ALJ noted that much of Colton's stress was situational because she was living with her parents. Tr. 23.

Colton argues that Dr. William Trueblood's objective test results establish mild or very mild cognitive impairments. Indeed, the doctor also recommended that Colton begin work at a low stress occupation and gradually increase her occupational challenges. Tr. 1103. However, the ALJ accepted Dr. Trueblood's assessment that Colton suffered from mild or very mild cognitive impairments, so her argument is inconsequential. Tr. 23.

II.    Lay Witness Testimony

Colton argues the ALJ failed to articulate legally sufficient reasons for giving little weight to the lay witness testimony of her mother, Alberta Larson. Lay witness evidence is competent and cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2014). An ALJ may reject lay witness testimony by giving germane reasons for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Ms. Larson testified that Colton was unable to work due to swelling and sharp pains in her hands and feet, and other generalized pain. Tr. 200. She further testified that Colton is very dependent on her, but can make simple meals, let the dog out, make her bed, read, watch television, and shop occasionally. Tr. 201-04. Ms. Larson indicated that Colton is affected by her conditions when lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair

9- REPORT AND RECOMMENDATION

climbing, and using her hands. Tr. 205. The ALJ gave little weight to Ms. Larson's testimony because she opined that Colton was unable to work, an opinion which is reserved to the Commissioner. Tr. 23-24.

The Commissioner concedes the ALJ failed to give germane reasons for rejecting Ms. Larson's testimony regarding symptom allegations, but argues the error was harmless. Failure to address lay witness testimony may be harmless if the lay witness testimony does not describe additional limitations beyond those described by the claimant, and "the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina*, 674 F.3d at 1122 (*quoting Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Colton's subjective symptom testimony was properly rejected by the ALJ, and Ms. Larson's testimony does not describe any additional limitations beyond those described by Colton. Colton's testimony describes numbness and sharp pains in her hands and feet, generalized pain, and difficulties with lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, memory, concentration, and using her hands. Tr. 192, 197. She also stated that she can cook meals, let the dog out, make her bed, watch television, read, and shop occasionally. Tr. 193, 195. Ms. Larson's testimony does not describe any additional limitations beyond those which Colton herself describes. Colton argues that Ms. Larson's testimony and the testimony of K. Weber, a Social Security Field Office employee who conducted a video interview with Colton, show that Colton has difficulty concentrating and managing stress. Tr. 178, 205-06. However, Colton's subjective symptom testimony addressed her limitations regarding concentration and managing stress, but was validly rejected by the ALJ. Tr. 198-99. The ALJ's error is ultimately inconsequential to the disability determination and, therefore, ultimately harmless. *Molina*, 674 F.3d at 1122.

III.   Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Orn*, 495 F.3d at 632. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

*A.  Dr. William Trueblood*

Dr. Trueblood evaluated Colton in March 2015; he opined that she had a "mild or very mild degree" of psychological impairment. Tr. 1102. Colton's Wechsler Adult Intelligence Scale examination revealed average scores in verbal comprehension and processing speed, and below average scores in perceptual reasoning and working memory. Tr. 1104-05. When asked if Colton could return to work, Dr. Trueblood stated that "I would lean towards Linda [Colton] being able to do that." Tr. 1103. He further stated that "[i]t probably would be wise to do that [return to work] on a gradual basis and to start with low stress work." *Id.* The ALJ opined that Dr.

11- REPORT AND RECOMMENDATION

Trueblood's opinion was consistent with the record, specifically the statement that Colton has only a mild or very mild degree of impairment. Tr. 23.

Colton argues the ALJ erred by failing to find "that the neuropsychological impairment Dr. Trueblood diagnosed was a severe impairment at step two," and thus failed to include it in her RFC finding. Def. Reply 2. Colton's argument is somewhat unclear; however, the ALJ did not err in her analysis of Colton's mental impairments in her discussion at step two. Tr. 19. Additionally, Dr. Trueblood recognized that Colton suffered only a mild or very mild degree of psychological impairment, which would preclude it being found severe. Tr. 1102. *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (step two impairment "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work").

Colton further argues that the ALJ failed to credit Dr. Trueblood's recommendation that it "probably would be wise" for her to return to work on a gradual basis and begin with low stress work. However, ALJs may rely on specific imperatives from physicians, rather than mere recommendations. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Here, Dr. Trueblood's phrasing that it "probably would be wise" for Colton to begin with low stress work on a gradual basis indicates a mere recommendation. The ALJ did not err by declining to adopt Dr. Trueblood's recommendation.

### B. Drs. Jonathan Brewer and Thomas Manning

After the ALJ rendered her decision, Drs. Brewer and Manning submitted opinions regarding Colton's alleged disability. The Appeals Council considered the opinions but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 2. The court does not have jurisdiction over the decision of the Appeals Council to deny reviewing an ALJ's decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-

60 (9th Cir. 2012). However, "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Id.* at 1159-60, 1162-63.

The court must determine if the ALJ's decision is still supported by substantial evidence. Dr. Manning opined that Colton would be unable to maintain employment for even low stress sedentary work. Tr. 1113-16. He further stated that Colton could not stand or walk for more than two hours each workday, would need to elevate her legs while seated, would be absent at least four days per month, could walk for less than one block, need frequent breaks, and sit for at most 30 minutes at one time. Tr. 1114.

The limitations outlined by Dr. Manning, if credited, substantially change Colton's disability analysis. The ALJ stated that Colton's sleep apnea was not a severe impairment at step two; Dr. Manning diagnosed her with sleep apnea, and listed chronic fatigue as a symptom affecting her ability to work. Tr. 19, 1113. The ALJ opined that Colton was only mildly impaired in concentration, persistence, or pace at step two, and therefore, her mental impairments were not severe. Tr. 19. Dr. Manning opined that Colton's concentration and attention would be adversely affected for at least 20% of her time at work, which points to a much higher degree of impairment than "mild" and could necessitate finding her depression and anxiety severe impairments. Tr. 1116. If these impairments were considered severe, the ALJ's RFC finding is deficient.

Additionally, Dr. Manning's opinion lends support for Colton's subjective symptom testimony, which the ALJ doubted because there were few findings supporting her complaints of memory loss and chronic pain. Tr. 23. However, Dr. Manning opined that Colton suffered from

13- REPORT AND RECOMMENDATION

chronic pain and her attention and concentration were substantially affected by her medical conditions. Tr. 1114, 1116. Dr. Manning's opinion also contradicts the opinions of the non-examining physicians, to which the ALJ granted great weight. Tr. 23.

Finally, the limitations described in the doctor's opinion substantially differ from those in the hypothetical given to the VE. The ALJ posed a hypothetical that limited Colton's lifting ability to 20 pounds, with a normal amount of breaks. A second hypothetical limited Colton to sedentary work with occasional foot control operation, stooping, kneeling, crouching, and climbing of ramps or stairs, and never climbing ladders, ropes, or scaffolds. Tr. 46-47. Dr. Manning limited Colton to never lifting 20 pounds, never crouching, and rarely stooping. Tr. 1115. He further opined that Colton would need a break every 30 minutes, substantially more breaks than the normal amount hypothesized by the ALJ. Tr. 1114.

Accordingly, the ALJ's decision can no longer be said to be based upon substantial evidence. Because the ALJ's decision is no longer supported by substantial evidence, the court must consider recommending a remand for additional proceedings or for an immediate award of benefits.

*Remand*

A district court may reverse the decision of the Commissioner with or without remanding for a rehearing; except in rare circumstances, the proper course is to remand for additional investigation. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). A district court cannot remand a case to award benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). First, the court must determine the ALJ made a legal error. *Id.* Next, the court must review the record and determine if it is fully developed, free from conflicts and ambiguities, and "all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). "Unless

14- REPORT AND RECOMMENDATION

the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Dominguez*, 808 F.3d at 407. If the court concludes the record is fully developed, it must then "consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true." *Id.* If so, the court may remand for an award of benefits, but may exercise its discretion "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Burrell*, 775 F.3d at 1141.

Satisfying the threshold requirement, the Commissioner legally erred by failing to provide sufficient evidence for rejecting the opinions of Drs. Brewer and Manning.

The next step in the analysis is determining whether the record has been fully developed and further proceedings would serve no useful purpose. *Id.* Here, Dr. Brewer's opinion necessitates further administrative proceedings. The doctor opined that Colton was capable of sedentary work if she was allowed to sit or stand at will. Tr. 1110. The record is unclear as to whether Colton's past work as an admitting clerk allows her to sit and stand at will, which is an appropriate question for a vocational expert. *See* § 416.960(b)(2). The court notes that Dr. Brewer's opinion may actually support the ALJ's decision if a significant number of admitting clerk jobs allow a sit or stand option. Thus, a remand for further proceedings is warranted.

Dr. Manning opined that Colton was unable to sustain employment for even sedentary, low stress work. Tr. 1113-16. Dr. Manning opined that Colton's restrictions were due to "burning pain" in her extremities and emotional factors exacerbating her functional limitations. Tr. 1113. However, Dr. Manning's opinion is inconsistent with Colton's statements in his treatment notes. Colton reported to Dr. Manning that Setraline was "very helpful in allowing her

15- REPORT AND RECOMMENDATION

to stabilize her emotions." Tr. 1087. She further reported that Gabapentin was "very effective" at treating the "burning pain" in her hands and feet. *Id.* Dr. Manning's report that Colton would be unable to sit for more than two hours per day for at most 30 minutes at a time is unexplained, and conflicts with other physician opinions of record, including Dr. Brewer's opinion.

Thus, considering the medical opinion evidence from Drs. Brewer and Manning, significant factual ambiguities in the record remain unresolved. Because the ALJ is the proper arbiter of such issues, the court recommends a remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g); *Reddick*, 157 F.3d at 722 (ALJ is responsible for resolving conflicts and ambiguities in the medical record).

### *Conclusion*

Based on the foregoing, the Commissioner's decision denying Colton's application for SSI and DIB should be REVERSED and REMANDED for further proceedings.

### *Scheduling Order*

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 2⁰ day of September, 2016.

Mark Clarke
United States Magistrate Judge